**Received Electronically**
**January 19, 2023**
**United States Court of Appeals**
**For the First Circuit**

No. 23-_____

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

### IN RE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS

*Petitioner,*

_____

Petition for a Writ of Mandamus to the U.S. District Court for the District of Massachusetts in Case No. 1:14-cv-14176 (Hon. Allison D. Burroughs).

_____

## PETITION FOR WRIT OF MANDAMUS

Katie Townsend
  *Counsel of Record for Petitioner*
Grayson Clary
Emily Hockett
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

i

## CORPORATE DISCLOSURE STATEMENT

The Reporters Committee for Freedom of the Press is an unincorporated

nonprofit association with no parent company and no stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ........................................................................... v

INTRODUCTION ......................................................................................... 1

STATEMENT OF JURISDICTION ................................................................. 4

STATEMENT OF THE CASE ........................................................................ 5

    I.   Plaintiff challenges Harvard's admissions policies, alleging bias against Asian-American applicants. ..................................................................... 5

    II.  The Reporters Committee moves to intervene to unseal transcripts of sidebars held during the trial. ............................................................. 7

    III. The District Court denies Petitioner's motion to intervene and orders that portions of the sidebar transcripts remain sealed. ............................ 9

SUMMARY OF ARGUMENT ...................................................................... 13

ARGUMENT ............................................................................................. 13

    I.   Advisory mandamus is appropriate here. ................................................ 13

    II.  The common law and First Amendment presumptions of access attach to the sidebar transcripts. .................................................................. 15

        A.  The common law presumption applies. ............................................. 15

        B.  The First Amendment presumption applies. ...................................... 16

    III. The District Court erred in concluding that the common law and First Amendment presumptions of access were overcome with respect to portions of the sidebar transcripts. ........................................................... 18

        A.  The District Court erred in maintaining under seal all "applicant information," however defined. ........................................................... 19

        B.  The District Court erred in maintaining under seal a colloquy discussing the Court's possible need to recuse. .................................. 22

        C.  The District Court erred in maintaining under seal a racist joke made by a federal employee to Harvard's dean of admissions. ............. 24

        D.  The District Court erred in maintaining under seal its own commentary on the demeanor of a trial witness. ................................. 25

IV. The District Court erred in denying the motion to intervene and denying Petitioner a chance to be heard before reaching its decision. .......................25

    A.  Due process guarantees an opportunity to be heard *before* a decision denying access is reached. ........................................................26

    B.  The Reporters Committee's motion to intervene was not mooted by the District Court's decision to partially unseal the sidebar transcripts. ..................................................................................28

    C.  Petitioner satisfied the requirements for intervention. .............................31

CONCLUSION ...............................................................................32

CERTIFICATE OF COMPLIANCE ...................................................34

CERTIFICATE OF SERVICE.............................................................35

ADDENDUM....................................................................................36

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Cryovac, Inc.*,
 805 F.2d 1 (1st Cir. 1986) ...................................................................31

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
 404 F. Supp. 3d 486 (D. Mass. 2018)................................................1, 15, 16, 23

*Binh Hoa Le v. Exeter Fin. Corp.*,
 990 F.3d 410 (5th Cir. 2021)................................................................20

*Brown v. Univ. of Kansas*,
 599 F. App'x 833 (10th Cir. 2015)........................................................20

*Chafin v. Chafin*,
 568 U.S. 165 (2013) ...........................................................................31

*Comm'r v. Advance Local Media LLC*,
 918 F.3d 1161 (11th Cir. 2019)............................................................33

*Courthouse News Serv. v. Quinlan*,
 32 F.4th 15 (1st Cir. 2022) ...........................................................14, 17

*Da Graca v. Souza*,
 991 F.3d 60 (1st Cir. 2021) .................................................................15

*Doe v. Mass. Inst. of Tech.*,
 46 F.4th 61 (1st Cir. 2022) ..........................................................3, 14, 22, 24

*FTC v. Standard Fin. Mgmt. Corp.*,
 830 F.2d 404 (1st Cir. 1987) ..........................................................2, 19, 31

*Globe Newspaper Co. v. Pokaski*,
 868 F.2d 497 (1st Cir. 1989) ..........................................................14, 16, 19, 25

*Globe Newspaper Co. v. Superior Court*,
 457 U.S. 596 (1982) ......................................................................2, 27

*Hartford Courant Co. v. Pellegrino*,
 380 F.3d 83 (2d Cir. 2004) .................................................................18

*In re Boston Herald, Inc.*,
  321 F.3d 174 (1st Cir. 2003) ....................................................................4, 14, 31

*In re Cap. Cities/ABC, Inc's Application for Access
  to Sealed Transcripts*,
  913 F.2d 89 (3d Cir. 1990) ........................................................................8, 28, 29

*In re Globe Newspaper Co.*,
  729 F.2d 47 (1st Cir. 1984) ....................................................................................19

*In re Globe Newspaper Co.*,
  920 F.2d 88 (1st Cir. 1990) ..............................................................................4, 14

*In re Hearst Newspapers, LLC*,
  641 F.3d 168 (5th Cir. 2011)..................................................................................27

*In re L.A. Times Commc'ns LLC*,
  28 F.4th 292 (D.C. Cir. 2022) ........................................................................24, 25

*In re Providence J. Co.*,
  293 F.3d 1 (1st Cir. 2002) ...........................................................................*passim*

*In re Wash. Post Co.*,
  807 F.2d 383 (4th Cir. 1986)..................................................................................29

*Jennings v. Univ. of N. Carolina at Chapel Hill*,
  340 F. Supp. 2d 670 (M.D.N.C. 2004),
  *aff'd in part, vacated in part*, 482 F.3d 686 (4th Cir. 2007) ...............................24

*June Med. Servs., LLC v. Phillips*,
  22 F.4th 512 (5th Cir. 2022)...................................................................................25

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006)...........................................................................21, 28

*Miller v. Sam Houston State Univ.*,
  986 F.3d 880 (5th Cir. 2021)...................................................................................29

*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*,
  980 P.2d 337 (Cal. 1999)..........................................................................................18

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ..................................................................................................16

*Phoenix Newspapers, Inc. v. U.S. District Court*,
    156 F.3d 940 (9th Cir. 1998) ..................................................................17

*Press-Enter. Co. v. Superior Court*,
    478 U.S. 1 (1986) ...................................................................................17

*Press-Enter. Co. v. Superior Court*,
    464 U.S. 501 (1984) ..........................................................................17, 19

*Pub. Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988) .......................................30, 31, 32, 33

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
    584 F.3d 1 (1st Cir. 2009) ....................................................................27

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ......................................................................3, 19, 23

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) .............................................................................15

*Rushford v. New Yorker Mag., Inc.*,
    846 F.2d 249 (4th Cir. 1988) .........................................................21, 22

*San Jose Mercury News, Inc. v. U.S. District Court*,
    187 F.3d 1096 (9th Cir. 1999) ...............................................................4

*Siedle v. Putnam Invs., Inc.*,
    147 F.3d 7 (1st Cir. 1998) ...............................................................19, 24

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    142 S. Ct. 895 (2022) .............................................................................6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    397 F. Supp. 3d 126 (D. Mass. 2019)....................................................6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    980 F.3d 157 (1st Cir. 2020) ..................................................................6

*Taylor v. Grunigen*,
    No. 19-CV-11947, 2022 WL 313970 (D. Mass. Feb. 2, 2022)...........22

*United States v. Abuhamra*,
   389 F.3d 309 (2d Cir. 2004) .................................................................29

*United States v. Blagojevich*,
   612 F.3d 558 (7th Cir. 2010) ..........................................................32, 33

*United States v. Chin*,
   913 F.3d 251 (1st Cir. 2019) ..............................................................31

*United States v. Edwards*,
   823 F.2d 111 (5th Cir. 1987)........................................................*passim*

*United States v. Kravetz*,
   706 F.3d 47 (1st Cir. 2013) ..........................................................2, 16, 25, 27

*United States v. Pleau*,
   680 F.3d 1 (1st Cir. 2012) ................................................................14

*United States v. Smith*,
   787 F.2d 111 (3d Cir. 1986).........................................................16, 18

## Statutes

20 U.S.C. § 1232g ...............................................................................24

## Other Authorities

Aidan F. Ryan, *In First Day of Testimony, Khurana Says It's Okay Harvard
   Skews Wealthy*, The Crimson (Oct. 23, 2018),
   https://perma.cc/JY6J-TXJW ...............................................10, 11, 26

Anemona Hartocollis, *Presiding over the Harvard Admissions Trial: A
   Judge Who Was Rejected from Harvard*, N.Y. Times (Oct. 22, 2018),
   https://perma.cc/AN4S-QYYS .................................................10, 24

Editorial Board, *Opinion: On Race-Conscious University Admissions,
   SCOTUS Should Follow Precedent*, Wash. Post (Oct. 30, 2022),
   https://perma.cc/R2GN-2EAN ..............................................................6

Fed. R. Civ. P. 24 ...........................................................................32, 33

Jeannie Suk Gersen, *Education After Affirmative Action*, New Yorker
  (Oct. 29, 2022),
  https://perma.cc/C3YB-65G2 ...................................................................7

Mary Louise Kelly & Ian Millhiser, *The Supreme Court Could End
  Affirmative Action. What Could Happen Next?*, NPR (Nov. 4, 2022),
  https://perma.cc/N7NC-UED2 ...............................................................7

Matthew Schwartz, *Affirmative Action Faces Toughest Test in a Generation*,
  Bloomberg Law (Oct. 25, 2022),
  https://perma.cc/LZG6-7DFM ...............................................................6

Nick Anderson, *Harvard Admissions Trial Opens with University Accused
  of Bias Against Asian Americans*, Wash. Post (Oct. 15, 2018),
  https://perma.cc/ANE5-DG8X ...............................................................6

**INTRODUCTION**

This Petition arises from the exceptionally high-profile trial in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176 (D. Mass. Nov. 17, 2014), a suit alleging bias against Asian-American applicants to Harvard College that has since reached the Supreme Court. Despite intense public interest in the case, the District Court resolved to maintain under seal portions of the transcripts of sidebars held during that 2019 trial, including—among other details of obvious public concern—an anti-Asian-American joke that a federal official made to Harvard's dean of admissions, and a colloquy about the Court's own possible need to recuse. *See* Add. 96–08; Add. 145–47. It reached that decision in a minute order after closed hearings at which only the parties participated, despite a timely motion by the Reporters Committee for Freedom of the Press ("Petitioner") to intervene and be heard on behalf of the press and public.

The District Court's cursory resolution of the important public access questions presented by this case flouts precedent and demands correction. As no party disputed,[1] the common law and First Amendment guarantee the public presumptive access to the transcripts of sidebars held during civil trials. *See Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 404 F. Supp. 3d 486, 512 n.16 (D. Mass. 2018). And the District Court's reasons for concluding those presumptions

---

[1]    *See* Add. 16–17; Add. 14.

were overcome with respect to the information that it decided to maintain under seal—offered in a text-only docket entry, *see* Add. 5–6—are plainly insufficient. Remarkably, for instance, the Court explained the recusal colloquy would remain sealed because "nobody has a right to dispute my impartiality on that except the parties that were involved in the case," Add. 72, a straightforward rejection of the core logic of the right of access: that transparency "allows the *citizenry* to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system," *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (emphasis added) (citation and internal quotation marks omitted).

The District Court's procedural handling of the access questions was likewise patent error. Where a party seeks to seal judicial proceedings or records, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion," *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citation and internal quotation marks omitted), and it should go without saying that a "meaningful opportunity to be heard" means a chance "to be heard before any contrary decision is made." *United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987); *see also United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013). Here, the District Court announced its ruling after negotiating a resolution with the parties behind closed doors and dismissed the possibility of public input as "moot," a clear violation of "our Nation's tradition of

2

doing justice out in the open, neither 'in a corner nor in any covert manner.'" *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 68 (1st Cir. 2022) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 567 (1980) (plurality opinion)).

Advisory mandamus is the appropriate means for this Court to correct those errors and resolve the "important questions bearing upon the constitutional and common-law rights of public access to judicial records" presented here. *In re Providence J. Co.*, 293 F.3d 1, 9 (1st Cir. 2002). For the reasons herein, Petitioner respectfully asks this Court to issue a writ of mandamus, reverse the denial of Petitioner's motion to intervene, and order that the remaining portions of the sidebar transcripts be unsealed.

## STATEMENT OF JURISDICTION

This Court has mandamus jurisdiction to answer the "important questions

bearing upon the constitutional and common-law rights of public access to judicial

records" presented here.  *In re Providence J. Co.*, 293 F.3d at 9; *see also In re*

*Boston Herald, Inc.*, 321 F.3d 174, 177 (1st Cir. 2003); *In re Globe Newspaper*

*Co.*, 920 F.2d 88, 90 (1st Cir. 1990).[2]

---

[2]     Petitioner has also appealed the District Court's order, *see* Add. 93–95, a two-fold approach this Court has endorsed as the "prudent[]" means of ensuring "prompt review" of access questions. *In re Boston Herald*, 321 F.3d at 177.  But mandamus is preferred even where an appeal would also lie "[b]ecause of the perishable nature of news" and the risk of "the delay entailed by a direct appeal." *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1099 (9th Cir. 1999).

## STATEMENT OF THE CASE

**I.   Plaintiff challenges Harvard's admissions policies, alleging bias against Asian-American applicants.**

On November 17, 2014, Students for Fair Admissions, Inc. ("SFFA") filed suit against the President and Fellows of Harvard College ("Harvard"), alleging that the university follows "racially and ethnically discriminatory policies and procedures in administering [its] undergraduate admissions program . . . in violation of Title VI of the Civil Rights Act."  Complaint at 1, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176 (D. Mass. Nov. 17, 2014).  SFFA describes itself as "a coalition of prospective applicants and applicants to higher education institutions who were denied admission to higher education institutions, their parents, and other individuals who support the organization's purpose and mission of eliminating racial discrimination in higher education admissions."  *Id.* at 7.  Harvard calls SFFA "a vehicle designed to advance the policy preferences of its controlling founder"—overturning affirmative action.  Br. in Opposition at 37, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 20-1199 (U.S. May 17, 2021).

Among other objections to Harvard's policies, SFFA argued that "[s]tatistical evidence reveals that Harvard uses 'holistic' admissions to disguise the fact that it holds Asian Americans to a far higher standard than other students."  Complaint, *supra*, at 4.  On September 30, 2019, after a fifteen-day bench trial, the

District Court ruled in favor of Harvard on all counts.  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 397 F. Supp. 3d 126 (D. Mass. 2019).  This Court affirmed.  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 980 F.3d 157 (1st Cir. 2020).  The Supreme Court of the United States granted SFFA's petition for writ of certiorari, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 142 S. Ct. 895 (2022), and heard oral argument on October 31, 2022.

The case is "the biggest challenge to affirmative action in a generation." Matthew Schwartz, *Affirmative Action Faces Toughest Test in a Generation*, Bloomberg Law (Oct. 25, 2022), https://perma.cc/LZG6-7DFM.  The trial was extensively covered in the national media, *see* Nick Anderson, *Harvard Admissions Trial Opens with University Accused of Bias Against Asian Americans*, Wash. Post (Oct. 15, 2018), https://perma.cc/ANE5-DG8X, and the spotlight only brightened when the Supreme Court granted review, *see* Editorial Board, *Opinion: On Race-Conscious University Admissions, SCOTUS Should Follow Precedent*, Wash. Post (Oct. 30, 2022), https://perma.cc/R2GN-2EAN.  The Supreme Court's decision has the potential to transform higher education admissions.  *See* Mary Louise Kelly & Ian Millhiser, *The Supreme Court Could End Affirmative Action. What Could Happen Next?*, NPR (Nov. 4, 2022), https://perma.cc/N7NC-UED2.

II.     **The Reporters Committee moves to intervene to unseal transcripts of sidebars held during the trial.**

Despite that keen public interest, substantial portions of the District Court record remain sealed, including transcripts of sidebars held during the trial. On November 11, 2022, Professor Jeannie Suk Gersen of Harvard Law School—who has covered the case for the *New Yorker*, *see, e.g.*, Jeannie Suk Gersen, *Education After Affirmative Action*, New Yorker (Oct. 29, 2022), https://perma.cc/C3YB-65G2—submitted a letter to the District Court requesting that those transcripts be unsealed, *see* Add. 8. Harvard initially opposed any unsealing, *see* Add. 9; SFFA opposed unsealing "identifying information about applicants" but otherwise supported unsealing the transcripts, Add. 11. The District Court held a status conference on November 21, after which it gave the parties until December 5 to review the transcripts and file briefs stating their respective positions. *See* Add. 4.

On December 5, 2022 the parties filed short letter briefs. *See* Add. 13–15; Add. 16–19. Two days later, Petitioner filed a motion to intervene for the limited purpose of asserting the rights of the press and public to access sealed judicial records, including the sidebar transcripts. *See* Add. 20–25. As Petitioner's motion explained, the process the District Court apparently intended to follow—"minimal public briefing followed by a closed hearing at which only the parties' views [would] be heard"—would deny the public a meaningful opportunity to be heard on the continued sealing of the transcripts. Add. 21. In particular, Petitioner

argued that the lack of an opportunity to review the parties' proposed redactions in context, coupled with the lack of detail in the justifications offered by their briefs, would deny the public "the chance to 'directly rebut' the proffered rationale for secrecy that due process and the First Amendment require." Add. 21–22 (quoting *In re Cap. Cities/ABC, Inc's Application for Access to Sealed Transcripts*, 913 F.2d 89, 95 (3d Cir. 1990)). Petitioner therefore moved the District Court for an opportunity to respond in writing to the parties' proposed redactions, in context, and a public hearing on the merits before the District Court ruled on the propriety of continued sealing. *See* Add. 23. SFFA did not oppose limited-purpose intervention; Harvard opposed the motion in its entirety. Add. 25.

The District Court held a closed status conference with the parties on December 9. *See* Add. 26–58. As a subsequently released transcript explains, the District Court "didn't read" Petitioner's motion to intervene before deciding it would hold "one more sealed hearing where I could give [the parties] my rulings," only after which it would "do a public hearing." Add. 48, 51. The Court held another closed status conference with the parties on December 15, 2022, *see* Add. 63,[3] followed by a public proceeding immediately after that session, Add. 59–80.

---

[3]    There was no public notice of the closed hearing on December 15. In response to Petitioner's request for a public transcript of that closed hearing, the District Court stated: "This morning's hearing wasn't sealed. It just wasn't—I mean, I probably will seal it, but it wasn't sealed. It was just not well attended."

III.    **The District Court denies Petitioner's motion to intervene and orders that portions of the sidebar transcripts remain sealed.**

At the public proceeding on December 15, the District Court announced that it had "met with the parties briefly th[at] morning and gave them my rulings" as to what would remain sealed.  Add. 63.  The District Court also disclosed that it had reached an understanding with the parties that they "do not intend to appeal what I have done."  *Id.*  The purpose of the public proceeding, the District Court said, was only to "explain to [Professor Suk] Gersen and all the representatives from the [Reporters] Committee for Freedom of the Press what I've done here and why." *Id.*  When Petitioner's counsel asked if the Reporters Committee or other members of the public would "have an opportunity to respond to what has been withheld in writing before the Court finalize[d] that ruling," Add. 72, the District Court responded, "you can file what you want" but "I don't see revising my ruling in any significant way," Add. 72–73.

The District Court explained that three categories of information in the sidebar transcripts would remain sealed.  The first was a colloquy on the need (or not) for the District Court's recusal.  *See* Add. 145–47.  As was widely reported in the news media, an anonymous individual "sent a mass email to the reporters covering the trial suggesting that Judge Burroughs was biased against Harvard

Add. 73.  As the December 9 hearing transcript makes clear, that representation was false.

because the college had not accepted her," prompting a sidebar with "considerable debate, along with a few chuckles." Anemona Hartocollis, *Presiding over the Harvard Admissions Trial: A Judge Who Was Rejected from Harvard*, N.Y. Times (Oct. 22, 2018), https://perma.cc/AN4S-QYYS. The District Court explained it was keeping that sidebar under seal "by the agreement of the parties" and that "nobody has a right to dispute my impartiality on that except the parties." Add. 72. The District Court also suggested that the recusal sidebar fell within the scope of the parties' apparent agreement to seal any and all "applicant information." *Id.*

The second category of information kept under seal consisted of "subjective observations" that the District Court and Harvard's trial counsel made during a sidebar about the demeanor of a witness—Harvard Dean Rakesh Khurana—during a line of questioning that touched on a family tragedy. Add. 65. Khurana's testimony took place in open court, *see* Aidan F. Ryan, *In First Day of Testimony, Khurana Says It's Okay Harvard Skews Wealthy*, The Crimson (Oct. 23, 2018), https://perma.cc/JY6J-TXJW, but the Court concluded that "our perception of his reaction" should nevertheless be sealed "in the interest of his privacy," Add. 65.

The final category sealed was the text of a "poor, ill-advised, and in bad taste joke" sent to Harvard Dean William Fitzsimmons by an individual involved with a 1990 federal probe of Harvard's admissions practices, which "referenced certain Asian stereotypes." *Id.* SFFA had obtained the exchange via a Freedom of

10

Information Act request and unsuccessfully sought to introduce it at trial.  *See* Add.

98, 106–07.  While the Court acknowledged that the public "may well have other

means of getting that" information—via public records requests—the District

Court declined to make it available "through this proceeding."  Add. 69.  And

while the District Court concluded that Dean Fitzsimmons' reaction to the "joke"

should be unsealed because of the legitimate public interest in understanding the

evidentiary dispute, it found that the "joke" itself should remain sealed to protect

the federal employee's privacy.  *See* Add. 65.

Finally, the District Court explained that it would be denying Petitioner's

motion to intervene as "moot by virtue of the fact that in one way or another we're

giving them everything that they've asked for."  Add. 67.  When Professor Suk

Gersen asked if a transcript of the closed hearings would be unsealed so that the

public could understand the arguments underpinning the Court's disposition, the

District Court answered, "I'm not sure there's anything to be gained about what

people were thinking about . . . ."  Add. 70.  When Professor Suk Gersen pressed

the issue, the District Court accused her of being "greedy."  Add. 77.

On December 19, the District Court issued its minute order directing that the

transcripts be redacted for the reasons given and denying Petitioner's motion to

intervene.  *See* Add. 4–6.  On December 29, Petitioner filed a motion for

reconsideration of the District Court's order.  *See* Add. 80–90.  SFFA filed a

response objecting to any disclosure of information that would identify an applicant to Harvard but otherwise took no position with respect to reconsideration. *See* Add. 91–92. Harvard did not respond. As of this writing, the District Court has not acted on that motion.

On January 18, 2023, Petitioner filed a notice of appeal from the District Court's order. *See* Add. 93–95. This Petition followed.

## SUMMARY OF ARGUMENT

The District Court's resolution of the important transparency questions presented by this case was patently flawed—both substantively and procedurally.

The common law and First Amendment guarantee the press and public presumptive access to the transcripts of sidebars held during civil trials. The District Court's minute order does not—and could not—provide the requisite compelling reasons for finding that either presumption is overcome as to any of the information the District Court resolved to maintain under seal.

Nor is there justification for the District Court's decision to negotiate the extent of sealing with the parties in closed hearings, denying the public a "meaningful opportunity to be heard before any contrary decision [was] made." *Edwards*, 823 F.2d at 119. The predictable result was an order that erroneously adopts the parties' preferences without regard to the public interest. For the reasons herein, this Court should issue a writ of mandamus vacating the minute order, reverse the denial of Petitioner's motion to intervene, and order that the transcripts be unsealed.

## ARGUMENT

### I. Advisory mandamus is appropriate here.

This Court's advisory mandamus power extends to those cases where the question presented is "an unsettled one of substantial public importance," a

question "likely to recur" if left unaddressed, and one where "deferral of review would potentially impair the opportunity for effective review." *United States v. Pleau*, 680 F.3d 1, 4 (1st Cir. 2012) (en banc). As this Court has often observed, cases involving "important questions bearing upon the constitutional and common-law rights of public access to judicial records" fit the bill. *In re Providence J. Co.*, 293 F.3d at 9; *see also In re Boston Herald*, 321 F.3d at 177; *In re Globe Newspaper Co.*, 920 F.2d at 90. Not only do access controversies raise systemic issues of judicial administration, but they also go to the core of judicial power because "[d]istrust is toxic to the judiciary's authority." *Mass. Inst. of Tech.*, 46 F.4th at 69. Review cannot be deferred because "even a one to two day delay" in unsealing records "impermissibly burdens the First Amendment" rights of the public. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989).

This Court has yet to address whether judicial records in civil cases—or sidebar transcripts in particular—are presumptively accessible under the First Amendment, but the issue recurs in every civil proceeding in this Circuit. *See Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 (1st Cir. 2022). And as the District Court's perfunctory discussion of the interests that it concluded justify sealing makes clear, courts in this Circuit would benefit from further guidance on the considerations that can—or just as importantly cannot—overcome the presumptions of access. *Cf. Mass. Inst. of Tech.*, 46 F.4th at 70 (recognizing "the

need for greater clarity and predictability" in the related context of pseudonymity).

"[A]n immediate adjudication of the matter will clarify matters for judges, litigants, lawyers, and journalists in a wide range of cases," making advisory mandamus appropriate here. *In re Providence Journal Co.*, 293 F.3d at 11.[4]

## II.    The common law and First Amendment presumptions of access attach to the sidebar transcripts.

As the District Court recognized—and as neither party disputed—the common law and First Amendment presumptions of access attach to the sidebar transcripts at issue. *See* Minute Order; *see also Ark. Tchr. Ret. Sys.*, 404 F. Supp. 3d at 512 n.16 (applying presumption of access to unseal sidebar transcript relevant to a motion for recusal).[5]  First principles make the same point clear.

### A.    The common law presumption applies.

Under the common law, the public has a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon*

---

[4]    While this Court has typically addressed access questions through advisory mandamus, *see In re Providence Journal Co.*, 293 F.3d at 11, supervisory mandamus also would be appropriate.  The District Court's order "is palpably erroneous." *Da Graca v. Souza*, 991 F.3d 60, 64 (1st Cir. 2021) (citation omitted). And because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (citation omitted), sealing presents a "special risk of irreparable harm," *Da Graca*, 991 F.3d at 64 (citation omitted).

[5]    SFFA argued the presumptions attach, *see* Add. 16–17; Harvard argued only that the presumptions were overcome in part on the facts of this case, *see* Add. 14.

15

*v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  That right "extends to judicial records in civil proceedings," *In re Providence J. Co.*, 293 F.3d at 13 n.5, and, as other circuits have concluded, guarantees a presumption of access to sidebar transcripts in particular.  *United States v. Smith*, 787 F.2d 111, 115 (3d Cir. 1986).  Sidebar conferences are an "integral part" of trials, *id.* at 114, and they often—as here—provide the setting in which "evidentiary or other substantive rulings" are made, *id.* at 115; *see also Ark. Tchr. Ret. Sys.*, 404 F. Supp. 3d at 512 n.16.  Though they may take place out of public earshot, the public's interest in access after-the-fact is hardly diminished.  To the contrary, "if there has been no contemporaneous observation, the public interest in observation and comment must be effectuated in the next best possible manner"—by unsealing a transcript. *Smith*, 787 F.2d at 114.

B.    The First Amendment presumption applies.

The First Amendment right of access likewise attaches to the sidebar transcripts.[6]  To determine whether the First Amendment presumption of access applies to a class of records, courts look to two complementary considerations:

---

[6]    Though this Circuit has yet to address whether the First Amendment right of access attaches in civil proceedings, *see Quinlan*, 32 F.4th at 20 (assuming it does), this Court recently noted that "each of our sister circuits that has considered whether the right extends to at least some documents and proceedings in civil cases concluded that it does," *id.* at 20 n.8 (collecting cases).

"experience and logic." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 9 (1986).

When the presumption attaches, redactions can be justified—if at all—only "by an

overriding interest based on findings that closure is essential to preserve higher

values and is narrowly tailored to serve that interest." *In re Providence J. Co.*, 293

F.3d at 11 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).

Experience supports access to sidebar transcripts. "Historically, post-trial

transcript access has been granted as soon as the factors which prompted hearing

closure have been resolved." *Phoenix Newspapers, Inc. v. U.S. District Court*, 156

F.3d 940, 947 (9th Cir. 1998). And intuitively so, because the justifications for

holding a proceeding out of earshot in the first instance—avoiding prejudicing the

jury, say—may have no force with respect to the subsequent transcript. *See id.*; *see

also Edwards*, 823 F.2d at 118 (finding a constitutional right of access to

transcripts of chambers conferences because "the availability of the transcript is the

key to satisfying the constitutional values of public scrutiny" where the public is

excluded in real time). That experience of access is reinforced by the fact that

sidebar transcripts are presumptively accessible to the public at common law, as

discussed above. *See In re Providence J. Co.*, 293 F.3d at 10 (noting that "the

jurisprudence discussing the First Amendment right of access . . . has been derived

in large measure from the jurisprudence that has shaped the common-law"); *see

also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (courts

have "generally invoked the common law right of access to judicial documents in support of finding a history of openness").

Logic too supports a constitutional presumption of access. Sidebars are an "integral" part of a trial. *Smith*, 787 F.2d at 114; *see also NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 980 P.2d 337, 363 (Cal. 1999) (the "assertion that chambers proceedings are categorically 'not part of the trial process'—and hence are not subject to the First Amendment right of access—is erroneous"). They can yield "substantive rulings" that the public is entitled to understand, *Smith*, 787 F.2d at 114, as they did in this case. And by shedding light on the court's reasoning or the parties' arguments, access to sidebar transcripts advances the core logic of the right of access: "contribut[ing] 'assurance that the proceedings were conducted fairly [and] discouraged . . . decisions based on secret bias or partiality.'" *Pokaski*, 868 F.2d at 503 (quoting *Richmond Newspapers*, 448 U.S. at 569).

## III.  The District Court erred in concluding that the common law and First Amendment presumptions of access were overcome with respect to portions of the sidebar transcripts.

Parties attempting to overcome either presumption of access face a daunting task. "Only the most compelling reasons can justify non-disclosure of judicial records" covered by the common law right. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410 (citation omitted). The constitutional right, for its part, can "only be overcome 'by an overriding interest based on findings that closure is essential to

18

preserve higher values and is narrowly tailored to serve that interest.'" *In re Providence J. Co.*, 293 F.3d at 11 (quoting *Press-Enter. Co.*, 464 U.S. at 510). In either context, the party advocating for secrecy bears the burden of demonstrating that the presumption is overcome. *See Standard Fin. Mgmt. Corp.*, 830 F.2d at 413 (common law); *In re Globe Newspaper Co.*, 729 F.2d 47, 57 (1st Cir. 1984) (First Amendment). A district court may go astray in that analysis by "ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if it mulls only the proper mix of factors, by making a serious mistake in judgment," *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998), and this Court's review is especially "rigorous" where judicial integrity is at stake, *In re Providence J. Co.*, 293 F.3d at 10. This is such a case, and the District Court's reasons for departing from the norm of transparency are inadequate on their face.

> A.    The District Court erred in maintaining under seal all "applicant information," however defined.

The District Court's justifications for sealing an undefined category called "applicant information," Add. 6, fall short. For one, the fact that the parties agreed to seal that information does not demonstrate that those redactions are warranted; on the contrary, "when the parties are mutually interested in secrecy, the judge is [the public interest's] *only* champion." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021). And beyond citing the parties' stipulated preference for secrecy, the District Court's order does not explain the boundaries of "applicant

information"; identify the specific privacy interests allegedly at stake; or consider the role any particular "applicant information" played in the judicial process.

Petitioner is aware of no authority for the proposition that any information concerning a college application is—in and of itself, without reference to any particular personal details—sensitive enough to overcome the common law or First Amendment presumption of access.  *Cf. Brown v. Univ. of Kansas*, 599 F. App'x 833, 839 (10th Cir. 2015) (sealing only those portions of the record containing information about law school applicants who "disclose[d] criminal or disciplinary records").  The issue is made worse by the specific types of information that are apparently included under the heading of "applicant information" in this case.[7]

---

[7]    It is unclear from the redacted transcripts whether the agreement to seal "applicant information" was ultimately relied upon to seal anything other than discussion of the District Court's own application to Harvard in the recusal colloquy.  That information was apparently sealed in other documents in the case in the first instance by a minute order that contained no findings of any kind, *see* Order Granting Motion to Seal Document, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176 (D. Mass. Oct. 24, 2016) (ECF No. 206), on the basis of an uncontested motion whose only rationale was that the information had been designated confidential under a stipulated protective order, *see* Plaintiff's Assented-To Motion to File Under Seal at 1–2 , *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176 (D. Mass. Oct. 20, 2016) (ECF No. 201).  There can be no serious dispute that such a showing is insufficient to overcome the presumptions of access.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion." (alterations in original) (citation omitted)); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1988) (same); *Taylor v. Grunigen*, No. 19-CV-11947, 2022 WL 313970, at *2 (D. Mass. Feb. 2, 2022) ("Beyond citing the terms of the

The category apparently extends, for instance, to information identifying "those challenging the admissions process," Add. 17—presumably the members SFFA invoked to establish standing. But those individuals are not mere third parties; they are voluntary participants in the litigation who stepped forward to submit declarations to bolster their organization's advocacy goals. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss at 2–6, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176 (D. Mass. Oct. 21, 2016) (ECF No. 204). Sealing that information is more akin to permitting a plaintiff to litigate under a pseudonym than to protecting "[t]hird-party" privacy, Add. 5, and this Circuit has already explained why there is a strong presumption that participants in litigation be named, *see Mass. Inst. of Tech.*, 46 F.4th at 68–70.

The countervailing justification for secrecy that SFFA offered—a chilling effect on challengers to college admissions policies, *see* Add. 15—fell well short of the only authority it cited, *see Mass. Inst. of Tech.*, 46 F.4th at 71–72 (characterizing "cases in which anonymity is necessary to forestall a chilling effect on future litigants" as exceptional ones involving, for instance, "intimate issues such as sexual activities" or a risk that "a potential party may be implicated in illegal conduct" (citations and internal quotation marks omitted)). There can be no

---

protective order and noting the parties' agreement, defendant fails to identify a sufficient factual basis of potential harm to seal the material.").

serious comparison between the fear of being identified as a critic of college

admissions practices and the fear of being identified as a perpetrator or victim of

sexual violence.  *See id.* at 63.  And it isn't difficult to see, either, how information

about individuals "challenging the admissions process," Add. 17, would be key to

the public's ability to evaluate the merits of the litigation, including Harvard's

argument that SFFA "is a vehicle designed to advance the policy preferences of its

controlling founder" rather than "a genuine membership organization," Br. in

Opposition at 37, *Students for Fair Admissions, Inc. v. President & Fellows of

Harvard Coll.*, No. 20-1199 (U.S. May 17, 2021).  The sealing of any and all

"applicant information" on the parties' say-so was error.

> B.   The District Court erred in maintaining under seal a colloquy
>      <u>discussing the Court's possible need to recuse.</u>

The generic sealing of all "applicant information" and the "agreement of the

parties" is also the only rationale the District Court offered for sealing a discussion

of its determination whether to recuse.  But the same balance of interests cannot

plausibly govern a passing discussion of a third party's personal information and

an extended colloquy on recusal, an issue that goes to the core logic of access: the

public's right to know proceedings have been conducted "fairly to all concerned,"

without "secret bias or partiality."  *Richmond Newspapers*, 448 U.S. at 569.

As other courts in this Circuit have recognized in this precise context—

unsealing the transcript of a sidebar relevant to the potential need for a judge's

recusal—public access to that material is keenly relevant to "respect for the legal system," and the presumptions of access therefore have special force. *Ark. Tchr. Ret. Sys.*, 404 F. Supp. 3d at 512 n.16. Any privacy interests at stake, for their part, are diminished by the fact that the colloquy discussed the District Court in its "public capacity," *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022), and information that is already public, *see* Hartocollis, *supra*. And Congress's decision to exclude the educational information of unsuccessful applicants from the scope of the Federal Educational Rights and Privacy Act (FERPA), *see* 20 U.S.C. § 1232g(a)(6), only underlines that the District Court's order cannot rest on a free-floating interest in sealing information that relates in some way to a college application, *see Jennings v. Univ. of N. Carolina at Chapel Hill*, 340 F. Supp. 2d 670, 682 (M.D.N.C. 2004), *aff'd in part, vacated in part*, 482 F.3d 686 (4th Cir. 2007) (fact that information falls within a FERPA exception counsels against sealing); *cf. Mass. Inst. of Tech.*, 46 F.4th at 76 (access analysis should be guided by "the background confidentiality regime").

The District Court engaged none of these points. Not only does the order ignore "a material factor that deserves significant weight," it rests wholly on an "improper factor"—the parties' agreement. *Siedle*, 147 F.3d at 10 (emphasis added). The recusal colloquy should be unsealed.

C.    The District Court erred in maintaining under seal a racist joke made by a federal employee to Harvard's dean of admissions.

The District Court's proffered justification for sealing an anti-Asian-American joke that a federal official made to Dean Fitzsimmons likewise falls short of what the common law and First Amendment require.  The public cannot reasonably understand "the Dean's response," Add. 5, without knowing what the Dean was responding to, and it should go without saying that allegations of anti-Asian-American bias go to the merits of this litigation.  The District Court's reliance on the possibility that unsealing the proposed *exhibit* could risk confusion because the joke was written on Harvard stationery, *see id.* at 5–6, makes no sense: It has no relevance to whether the words should be unsealed where they appear in the *transcripts*.  And the fact that the same document proposed as an exhibit can be obtained via FOIA, *see* Add. 98, vitiates any need for secrecy because "[p]ublicly available information cannot be sealed"—full stop, *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022); *see also Kravetz*, 706 F.3d at 63.

Even if that weren't the case, the "joke" speaks to misconduct by a federal official whose performance the public is entitled to evaluate.  As this Court has already explained, the values underlying the First Amendment right of access are "clearly implicated" in cases involving "public concern over the integrity of government and its officials."  *Pokaski*, 868 F.2d at 503.  The joke's apparent

offensiveness makes it more—not less—important that the public be able to see it. *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 298.

> D.   The District Court erred in maintaining under seal its own <u>commentary on the demeanor of a trial witness.</u>

Finally, it is difficult to understand how "the privacy rights of third parties" could justify non-disclosure of the District Court's and counsel's characterization of the demeanor of a witness who testified in open court.  Add. 5.   That material's "relevance or value to the public" is in evaluating how the District Court managed an emotionally charged line of questioning and an attorney's objection that opposing counsel had behaved inappropriately—the performance of an official function that squarely implicates public supervision of the judiciary.  *Id.*  And it should go without saying that no third-party privacy interest could be at stake in the Court or counsel's characterization of testimony that members of the press and public saw for themselves at trial.  *See* Ryan, *supra*, (describing the exchange in which counsel for SFFA "quizzed the dean on the acknowledgements listed in his Ph.D. 'thesis'" that is apparently at issue in the redacted passages).  The District Court erred by sealing that information with a cursory nod to third-party privacy.

## IV.   The District Court erred in denying the motion to intervene and denying Petitioner a chance to be heard before reaching its decision.

Where parties hope to keep judicial records sealed, "representatives of the press and general public must be given an opportunity to be heard on the question

of their exclusion," *Globe Newspaper Co.*, 457 U.S. at 609 n.25 (citation omitted), and "permissive intervention is the procedurally correct vehicle" for the public to assert its rights, *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009). But rather than give Petitioner—or any other member of the press and public—a chance to be heard on the asserted need for sealing, the District Court apparently reached a negotiated resolution with the parties behind closed doors. *See* Add. 63. The Court then denied Petitioner's motion to intervene "as moot" even though the Court's disposition had neither granted the relief sought nor made effective relief impossible. Add. 67. That was error.

A.  Due process guarantees an opportunity to be heard *before* a decision denying access is reached.

It is black-letter law—in this and every other Circuit—that "notice and an opportunity to be heard [must] be given prior to the sealing of documents to which a right of access attaches." *Kravetz*, 706 F.3d at 59 (citing *In re Hearst Newspapers, LLC*, 641 F.3d 168, 182 (5th Cir. 2011)). Transcripts of chambers or sidebar proceedings are no exception: "[I]f the presumption that transcripts will be released is to be effective, once the press files a motion for disclosure, it must be given a meaningful opportunity to be heard before any contrary decision is made." *Edwards*, 823 F.2d at 119. No meaningful opportunity was provided here.

The blanket sealing of the transcripts was never supported in the first instance by particularized findings or a party's motion; instead, the records were

26

"seal[ed] as a matter of course." Add. 151. As a result, the public had "absolutely no information concerning the[] particular subject matter" of the information under seal and was unfairly placed "at a severe disadvantage in trying to show that its First Amendment and common law rights of access" required disclosure. *In re Cap. Cities/ABC*, 913 F.2d at 95. Even after Professor Suk Gersen requested access, the parties offered only skeletal—and even misleading—characterizations of their secrecy interests, denying the public the opportunity to "directly rebut" the rationale for sealing that due process and the First Amendment require. *Id.*

For instance, while Harvard "identifie[d] the redactions it [sought] by page number and line number, it [did] not provide similarly specific compelling reasons" to justify them. *Kamakana*, 447 F.3d at 1183–84. Instead, Harvard tied the justifications it offered by way of "example" to only a fraction of the redactions it proposed, leaving the public with no hint as to why Harvard believed concealing the rest was necessary. Add. 9. And even where the parties did tie their arguments to specific redactions, their characterizations of the transcripts' contents were either too vague for the public to respond or obfuscated the issues at stake. Neither party's submission disclosed, for instance, that one of the unsuccessful "applicants" whose "information" the parties agreed to maintain under seal was the District Court. *See* Add. 9, 11, 14–15, 16–18. And all these difficulties were compounded by the fact that the public could not review the parties' proposed

27

redactions in context, even though all involved agreed that "the vast majority" of the transcripts need not be sealed.  Add. 14.

The result was that the public learned the true rationales advanced in support of sealing the portions of the transcript at issue only *after* the District Court reached its decision.  But fundamental principles of due process make clear that a court may not require litigants to "resort to a motion to reconsider" as a substitute for "arguments [they] might have made before dismissal."  *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 890 (5th Cir. 2021); *see also In re Wash. Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986) (availability of motion to unseal improperly sealed judicial records "does not cure the lack of an opportunity for a hearing with respect to the original decision to seal them").  Due process guaranteed Petitioner a chance "to correct or contradict arguments or evidence offered" in support of secrecy, *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004), as well as an open hearing at which the public could have "elicited on the record from the sole part[ies] . . . familiar with the contents" of the transcripts their justifications for continued sealing, in order "to make a more focused argument" for access, *In re Cap. Cities/ABC*, 913 F.2d at 95.  The District Court's decision to resolve the case in private and announce its decision to the public as a fait accompli was error.

B.    The Reporters Committee's motion to intervene was not mooted by the District Court's decision to partially unseal the sidebar transcripts.

The District Court's only acknowledgement of Petitioner's request for an opportunity to be heard was its conclusion that its minute order "essentially provide[d] the relief requested and the motion [was] therefore moot." Add. 6. That disposition makes no sense; the District Court neither granted the relief Petitioner sought nor otherwise made effective relief impossible.

In keeping with the demands of due process, Petitioner had requested an opportunity to respond in writing to the parties' proposed redactions, in context, and a public hearing before the District Court ruled on any need for continued sealing. *See id.* at 23 (moving the Court for access to proposed redactions to which the public could "meaningfully respond in writing," a "*subsequent* hearing," and "*thereafter*" a written ruling supported by findings specific enough to permit appellate review) (emphasis added); *see also, e.g.*, *Edwards*, 823 F.2d at 119. And this Court's precedent makes clear that Petitioner "should have been granted Rule 24 intervenor status *before* the district court acted on its motion for access" because intervenor status is what entitles a non-party to a civil proceeding to file a full-fledged motion to unseal in the first place. *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 784 (1st Cir. 1988) (emphasis added).

Here, the District Court simply ignored the motion to intervene and announced its disposition of the merits at the beginning of a public "hearing"—a disposition the Court had already reached after hearing arguments from the parties

behind closed doors.  *See* Add. 63.  Indeed, the Court repeatedly made clear that

the only purpose of the public proceeding was "to explain to [Professor Suk]

Gersen and all the representatives from the [Reporters] Committee for Freedom of

the Press what I've done here[,]" and that the Court was neither interested in

hearing from the public nor open to "revising my ruling in any significant way."

Add. 63, 73.  And for the reasons given above, the disposition reached by the

District Court (without any public input) does not square with the substantive

standards governing public access.  That was a denial of the relief requested, not a

decision to "essentially" grant it.  Add. 7.[8]  But even if the order's terms had

overlapped in part with Petitioner's requested relief, a matter becomes moot "only

when it is impossible for a court to grant any effectual relief whatever," not when

the relief ordered is merely similar or related to what a party requested.  *Chafin v.*

*Chafin*, 568 U.S. 165, 172 (2013) (emphasis added) (citation omitted).

The District Court's reliance on mootness to deny the motion to intervene

was improper.  Other Circuits have condemned nearly identical procedural errors–

---

[8]      Even if the District Court had styled its disposition as a denial of Petitioner's
bid to unseal the sidebar transcripts, it should nevertheless have granted intervenor
status—a separate issue that precedes the merits.  *See Pub. Citizen*, 858 F.2d at
784; *see also United States v. Chin*, 913 F.3d 251, 253 (1st Cir. 2019) (noting that
a district court "granted [a news organization's] motion to intervene but otherwise
denied in substantial part the motion to unseal the requested information"); *In re*
*Boston Herald*, 321 F.3d at 176 (same); *Standard Fin. Mgmt. Corp.*, 830 F.2d at
407 (same); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 4 (1st Cir. 1986) (same).

–where a district court has "entertained submissions in chambers from counsel and then reached a decision, which was not announced to the public until the very day the judge denied the motion to intervene." *United States v. Blagojevich*, 612 F.3d 558, 561 (7th Cir. 2010). This Court should do the same.

C.    Petitioner satisfied the requirements for intervention.

Finally, while the District Court offered no basis other than mootness for denying Petitioner's motion to intervene, it bears underlining that Petitioner more than satisfied the requirements for intervention under Rule 24(b), which this Court has often explained "is an effective mechanism for third-party claims of access to information generated through judicial proceedings." *Pub. Citizen*, 858 F.2d at 783. Such intervention is appropriate where an applicant's "claim or defense . . . shares with the main action a common question of law or fact" and where the motion is "timely" in the sense that it will neither "unduly delay [n]or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

When a party moves to intervene for the limited purpose of unsealing judicial records, courts have uniformly recognized that the common law and First Amendment rights of access provide the common question of law or fact that Rule 24(b) requires. *See Comm'r v. Advance Local Media LLC*, 918 F.3d 1161, 1173 n.12 (11th Cir. 2019) (collecting cases). Petitioner's motion to intervene was also timely. Where the First Amendment and common law rights of access attach, they

attach "today for the records of cases decided a hundred years ago as surely as [they] do[] for lawsuits now in the early stages of motions litigation." *Pub. Citizen*, 858 F.2d at 786 (citation omitted). And here, Petitioner attempted to participate as soon as it was alerted that the District Court intended to establish a process for deciding whether and to what extent the sidebar transcripts should be unsealed. *See Blagojevich*, 612 F.3d at 561.

Finally, no party could have been prejudiced, *see* Fed. R. Civ. P. 24(b)(3), by a full presentation of the arguments for unsealing the sidebar transcripts while they remained temporarily under seal, *see Pub. Citizen*, 858 F.2d at 786. The public's rights, though, were plainly prejudiced by a truncated consideration of the question behind closed doors. The denial of the motion to intervene was error.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully urges the Court to issue a writ of mandamus vacating the minute order, reverse the denial of Petitioner's motion to intervene, and order that the sidebar transcripts be unsealed.

Date: January 19, 2023

/s/ Katie Townsend
Katie Townsend
   *Counsel of Record for Petitioner*
Grayson Clary
Emily Hockett
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005

32

Telephone: (202) 795-9300
Facsimile: (202) 795-9310

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type volume requirements of Fed. R.
    App. P. 21(d) and L.R. 21.0 because it contains 7,690 words,
    excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and
    Fed. R. App. P. 21(d).

2.  This brief complies with the typeface requirements of Fed. R. App.
    32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6)
    because it has been prepared in a proportionally spaced typeface using
    Microsoft Word in 14-point Times New Roman.


Date: January 19, 2023                  */s/ Katie Townsend*_____
                                        Katie Townsend
                                        *Counsel of Record for Petitioner*

**CERTIFICATE OF SERVICE**

I, Katie Townsend, hereby certify that on January 19, 2023, a copy of the

foregoing was filed electronically using this Court's CM/ECF System and

dispatched via third-party commercial carrier for delivery within 3 days to:

Plaintiff Students for Fair Admissions, Inc.

Patrick Strawbridge
Consovoy McCarthy PLLC
8th Floor, South, PMB #706
Ten Post Office Square
Boston, MA 02109

Defendant President & Fellows of Harvard College

Felicia H. Ellsworth
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

U.S. District Court for the District of Massachusetts

Hon. Allison D. Burroughs
U.S. District Court for the District of Massachusetts
 John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Date: January 19, 2023                              */s/ Katie Townsend*_____
                                                    Katie Townsend
                                                    *Counsel of Record for Petitioner*